## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | |
|---|---|
| HUGO ADRIAN VILLAR CASTELLANOS; SHISHIR TIMILSENA; AMIR GHOLAMI; AND, JULIO DYLAN SANCHEZ WONG, *individually*, | Civil Action No. 25-cv-80 |
| *Plaintiffs*, | |
| *v.* | |
| KRISTI NOEM, *in her official capacity as* Secretary of Homeland Security; the DEPTARTMENT OF HOMELAND SECURITY; and TODD LYONS*, in his official capacity as* Acting Director of U.S. Immigration and Customs Enforcement, | |
| *Defendants.* | |

## INTRODUCTION

1.     Plaintiffs are international students in lawful F-1 status, enrolled at the University of Texas-Rio Grande Valley with the campus split between Brownsville, Harlingen, and Edinburg, Texas. They range from completing requirements to graduate with a Bachelor Degree in May 2025 to defending the PhD dissertation and making application for an Associate Professor position. They are a few of approximately nine hundred international students nationwide whose SEVIS record has been abruptly and unlawfully terminated by U.S. Immigration and Customs Enforcement (ICE) in the last few weeks, effectively stripping them of their ability to

remain a student in the United States.

2.     The Student and Exchange Visitor Information Systems (SEVIS) is a government database that tracks international students' compliance with their F-1 status.[1] ICE, through the Student and Exchange Visitor Program (SEVP), uses SEVIS to monitor student status. SEVP terminated Plaintiffs' SEVIS record and marked Plaintiffs' as "OTHER-Individual identified in criminal records and/or has had their VISA revoked."

3.     The termination of a SEVIS record effectively ends F-1 student status. However, even when a visa is revoked ICE is not authorized to terminate Plaintiffs' student status. The student who is already admitted is permitted to continue the authorized course of study.  *See* ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010).[2]

4.      The grounds cited by ICE in the SEVIS termination do not provide legal authority to terminate Plaintiffs' SEVIS record. An F-1 visa controls a student's entry into the country, not their continued lawful presence once admitted.  Plaintiffs were in full compliance with the terms of the F-1 status and had not engaged in conduct that would warrant termination of the status.

5.     Rather, DHS's policy of unlawfully terminating SEVIS records based on a report of an arrest that resulted in the State's Motion to Dismiss at the outset, a traffic infraction, or a case otherwise disposed of appears to be designed to coerce

---

[1] SEVIS is "the web-based system that [DHS] uses to maintain information regarding:" F-1 "students studying in the United States[.]"  https://studyinthestates.dhs.gov/site/about-sevis.

[2] https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.

students, including Plaintiffs, into abandoning their studies and "self-deporting" despite not violating their status. Upon information and belief some students have left the Country after receiving their University's advisal of the SEVIS termination. If ICE believes a student is deportable for having a criminal record or a revoked visa, it has the authority to initiate removal proceedings and make its case in immigration court. It cannot, however, misuse SEVIS to circumvent the law, strip students of status, and drive them out of the country without process.

6.    Over the past week, visa revocations and SEVIS terminations have shaken campuses across the country, including those in the University of Texas system, including at the Rio Grande Valley campus. The SEVIS terminations have taken place against the backdrop of numerous demands being made of universities by the federal government and threats of cutting off billions of dollars in federal funding. They have created chaos as schools have attempted to understand what is happening and do their best to inform and advise students. Students' lives and dreams have been upended without notice and the opportunity to respond, as required by the *Fifth Amendment* to the *U.S. Constitution*. The DHS must "provide [Plaintiffs] with all the process to which he would have been entitled had [their SEVIS statuses] not been unlawfully" terminated. *Noem, et al. v. Abrego Garcia,* 604 U. S. ____, Slip Op. No. 24-A-949, 3 (2025). DHS "must comply with its obligation to provide Abrego Garcia with "due process of law," including notice and an opportunity to be heard, in any future proceedings." *Id.,* citing, *Reno* v. *Flores*, 507 U. S. 292, 306 (1993).    A person admitted to the U.S. and continuing to reside lawfully therein is

entitle to due process prior to expulsion. *Kwong Hai Chew v. Colding, et al.*, 344 U.S. 590 (1953); *Dixon v. Alabama State Board of Ed.,* 294 F.2d 150, 151, 156-157 (5th Cir. 1961), *cert. denied,* (notice and the opportunity to respond are required before expulsion from a public school). Unlike *Dixon* this case is not about the University's termination of employment, but Plaintiffs have lost their SEVIS status, their advancement towards their degrees, their related employment, and they and their parents are suffering severe emotional distress, resulting from ICE's Termination of SEVIS status and the effective expulsion from their programs of study without notice and the opportunity to respond.

7.    To be clear, Plaintiffs do not challenge the revocation of a visa in this case. Rather, Plaintiffs bring this action under the *Administrative Procedure Act* (*APA*), the *Fifth Amendment* to the *U.S. Constitution*, and the *Declaratory Judgment Act* to challenge ICE's illegal termination of the SEVIS record of these students. The revocation of an F-1 visa does *not* constitute a failure to maintain F-1 student status thus cannot serve as a basis for termination of F-1 student status in the SEVIS system.

8.    DHS's own policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010).[3]  Instead, when a student is in the U.S. and a visa is revoked, the student is permitted to pursue the course of study in school. Upon departure, the SEVIS record is terminated, and the student must obtain a new

---

[3] *Id.*

visa from a consulate or embassy abroad before returning to the United States. *See* Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).[4] If DHS wishes to terminate F-1 student status under the SEVIS system after (or independent of) revocation of an F-1 visa, DHS must comply with 8 C.F.R. § 214.1(d). *See Jie Fang v. Director of U.S. ICE*, 935 F.3d 172, 185 n.100 (3rd Cir. 2019). DHS did not comply, gave no notice or opportunity for Plaintiffs to respond why termination of their SEVIS status would be wrong, as is required, resulting in injury to the students, their Universities, and to the United States' interest in foreign affairs through its Student Exchange Visitor program. Like *Abrego Garcia,* this court can order the DHS "to "facilitate" the restoration of" each Plaintiffs' SEVIS status, an effective "release from custody", "and to ensure that [each] case is handled as it would have been had [their SEVIS status] not been improperly" terminated. *Noem, et al. v. Abrego Garcia,* 604 U. S. ____, Slip Op. No. 24-A-949, at 2. The Government is obligated follow the law. *Id.,* at 4.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over the present action based on 28 U.S.C. §1331 (federal question), 28 U.S.C. §1346(b) (federal defendant), 5 U.S.C. §701, et seq. (right of review), and 28 U.S.C. §2201-2 (authority to issue declaratory judgment when jurisdiction already exists).

10.     Defendants waive their sovereign immunity for suits seeking injunctive relief against constitutional and statutory violations. 5 U.S.C. §702.

---

[4] https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

11.     Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. §1391(e) because Defendants are employees or officers of the United States, acting in their official capacity; and Plaintiff Villar Castellanos resides in the Cameron County, Texas, and all Plaintiffs reside within the Southern District of Texas, where the students attend classes at UTRGV sharing both Brownsville and Edinburg campuses. The Terminations without notice are the same for all Plaintiffs, and there is no real property involved in this action.

## PARTIES

12.     Plaintiff Hugo Adrian Villar Castellanos is an international student from Mexico who is enrolled in a Doctoral Program in Physics at UTRGV and resides in Brownsville, TX. Until April 8, 2025, when he was notified of the termination by an email from his University, he had been employed by the UTRGV in relation to his academic requirements as a Doctoral candidate, conducting research as a Graduate Research Assistant with Physics and Astronomy. He has received academic excellence in his undergraduate studies in physics and has maintained a 4.0 grade average in his Doctoral studies in Physics.  He can be identified by his U.S. Social Security Number XXX-XX-8510.

13.     Plaintiff Shishir Timilsena is an international student from Nepal who is enrolled in the second semester of a Doctoral Program in Physics at UTRGV and resides in Edinburg, TX. Until April 7, 2025, when he was notified of the termination by an email from his University, he had been employed by the UTRGV in relation to his academic requirements as a Doctoral candidate, conducting research as a

Graduate Research Assistant with Physics and Astronomy. He has maintained a 4.0 grade average in his Doctoral studies in Physics. He can be identified by his I-94 Admission Number XXXXXXX56A3.

14.    Plaintiff Amir Gholami is an international student from Iran who is enrolled in a Doctoral Program in Finance at UTRGV and resides in Edinburg, TX. Until April 10, 2025, when he was notified of the termination by an email from his University, he had been employed by the UTRGV in relation to his academic requirements as a Doctoral candidate, as a Graduate Associate Instructor. He can be identified by his I-94 Admission Number XXXXXXX45A3. (his travel history appears to have been scrubbed from the CBP travel history).

15.    Plaintiff Julio Dylan Sanchez Wong is an international student from Mexico who is enrolled in a Bachelor's Program in Computer Sciences at UTRGV and resides in Edinburg, TX. Until April 8, 2025, when he was notified of the termination by an email from his University, he had been employed by the UTRGV in relation to his academic requirements as Student Assistant with Information Technologies. He can be identified by his I-94 Admission Number XXXXXXX65A2.

16.    Defendant U.S. Department of Homeland Security ("DHS") is a cabinet-level department of the Executive Branch of the federal government and is an "agency" within the meaning of 5 U.S.C. § 551(1). DHS includes various component agencies, including U.S. Immigration Customs and Enforcement ("ICE").

17.    Defendant Kristi Noem is the Secretary of Homeland Security and has ultimate authority over DHS, including ICE. In that capacity and through her agents,

Defendant Noem has broad authority over the operation and enforcement of the immigration laws. Defendant Noem is sued in her official capacity.

18.    Defendant Todd Lyons is the Acting Director of ICE and has authority over the operations of ICE. In that capacity and through his agents, Defendant Lyons has broad authority over the operation and enforcement of the immigration laws. Defendant Lyons is sued in his official capacity. ICE is responsible for the termination of Plaintiffs' SEVIS record.

19.    The U.S. Attorney for the Southern District of Texas and the U.S. Attorney General are notice parties only.

## PERMISSIBLE JOINDER OF PARTIES

20.    The Court may join Plaintiffs to a suit "when they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of" "the same series of occurrences; and any question of law or fact common to all plaintiffs will arise in the action." *Fed. R. Civ. P.* 20(a)(1).

21.    Joinder is at the option of the Plaintiffs when they meet the requirements of Rule 20. *Applewhite v. Reichold Chemicals, Inc.,* 67 F.3d 571, 574 (5th Cir. 1995).

22.    All of the international students were provided with an I-20 by their Designated School Official (DSO) to enroll in a University located in the Southern District of Texas.

23.    They were all approved for a Visa.

24.    They were all cleared after inspection for entry to the U.S. and issued I-

94 parole by the U.S. CBP for duration of status.

25.    All of the Plaintiffs' I-20 SEVIS status was current and valid.[5]

26.    They committed no offence which would render them deportable and otherwise maintained their status;

27.    They have all had their SEVIS record terminated without process.

28.    DHS through its component ICE unlawfully terminated their SEVIS status without process.

29.    They do not contest a visa revocation.

## LEGAL FRAMEWORK

30.    The SEVIS is a centralized database maintained by the SEVP within ICE used to manage information on nonimmigrant students and exchange visitors and track their compliance with terms of their status. Under 8 C.F.R. § 214.3(g)(2), DSOs must report through SEVIS to SEVP when a student fails to maintain status. SEVIS termination is governed by SEVP policy and regulations.

31.    DHS regulations distinguish between two separate ways a student may fall out of status: (1) an agency initiated termination and (2) a student who "fails to maintain status."

32.    With respect to the first, as established by Congress under 8 U.S.C. §1101(a)(15)(F), a noncitizen may study in the U.S. as a nonimmigrant. The F-1 visa provides a manner for the nonimmigrant to apply for entry to the U.S. Once the nonimmigrant is cleared for entry by the Customs and Border Protection (CBP)

---

[5] Referred to throughout as "I-20", "I-20 SEVIS status", or "SEVIS status."

component of DHS the F-1 visa holder is issued an I-94 parole document in F-1 status for the duration of status (D/S). 8 C.F.R. §214.2(f)(7) (no extension of status required if maintaining status and progressing towards degree). The continued stay – D/S, is controlled by adherence to the regulations governing the visa classification 8 C.F.R. §214.1(a)(3). Termination must be based on a student's failure to maintain status as noted in 8 C.F.R. §214.1(d). In *Jie Fang,* ICE terminated hundreds of students' status without authorization because of their claim that they committed fraud by being enrolled in an ICE-created fraudulent university, but 8 C.F.R. §214.1(d) only allows termination in highly limited circumstances. *Jie Fang*, 935 F.3d at 176 & n.22. "That provision states: "(d) Termination of status. Within the period of initial admission or extension of stay, the nonimmigrant status of an alien shall be terminated by the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act; by the introduction of a private bill to confer permanent resident status on such alien; or, pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." 8 C.F.R. § 214.1(d). None of those mechanisms were employed in this case." *Jie Fang*, 935 F.3d at 185 & n.100. Nor were those mechanisms applied in this case.

33.    The second category, failure to maintain status, involves circumstances where a student voluntarily or inadvertently falls out of compliance with the F-1 visa requirements, for example by failing to maintain a full course of study, without prior approval of the DSO, 8 C.F.R. §214.2(f)(6)(iii), engaging in unauthorized employment, or other violations of their status requirements under 8 C.F.R. § 214.2(f).

Additionally, 8 C.F.R. §214.1 outlines specific conduct that constitutes a failure to maintain status by any nonimmigrant visa holder. *Id.*, at (e) (unauthorized employment), (f) (giving false information to DHS), and (g) (criminal activity).

34.    With the respect to 8 C.F.R. § 214.1(g) criminal activity, a specific conviction "for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status . . . ." *Id.* Misdemeanor offenses that result in no conviction do not meet this threshold.

35.    Accordingly, a criminal charge that resulted in an outright dismissal or the revocation of a visa does not constitute failure to maintain status and cannot therefore be a basis for SEVIS termination.[6]

36.    Prudential revocation of a visa may be done if an individual is inadmissible under 8 U.S.C. §1182(a) or §1184(g), or for an alcohol related offence in the last 5 years, but not if it was already addressed by the consulate.[7]

37.    If a visa is revoked prior to the student's arrival to the United States, then a student may not enter and the SEVIS record is terminated. However, the SEVIS record may not be terminated as a result of a visa revocation after a student has been admitted into the United States, because the student is permitted to

---

[6] The Foreign Affairs Manual provides that a visa may be revoked based on a DUI Arrest or conviction. 9 FAM 403.11-3(A) (U) When You May Revoke Visas. However, a revocation is not authorized where the arrest has "already been addressed within the context of a visa application, i.e., the individual has been through the panel physician's assessment due to the arrest." 9 FAM 403.11-5(B) (U).

[7] 9 FAM 403.11-5(B) (U) Prudential Revocations

continue the authorized course of study.[8]

38.    ICE's own guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record."[9] If the visa is revoked, the student can continue their course of study in school, but upon departure, the SEVIS record is terminated and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States.[10]

39.    A visa revocation *can* be charged as a ground of deportability in removal proceedings, but deportability can be contested in such proceedings.[11] Where the allegation to terminate are for criminal activity, if the crimes are not deportable offences, the immigration judge may dismiss removal proceedings even where a visa is revoked, if the student is able to remain in valid SEVIS status.[12] Only if a final removal order is entered would status be lost.

40.    A student who has not violated their F-1 status, even if their visa is revoked, cannot have a SEVIS record terminated based on 8 U.S.C. §1227(a)(1)(C)(i) (failure to maintain status), 8 U.S.C. §1227(a)(4)(C)(i) (foreign policy grounds), or any deportability ground for that matter.

41.    The immigration courts have no ability to review the SEVIS

---

[8] ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf

[9] *Id.*

[10] Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016), available at https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

[11] *See* 8 U.S.C. §1227(a)(1)(B); 8 U.S.C. §1201(i) (allowing immigration court review of visa revocation).
[12] 8 C.F.R. §1003.18(d)(ii)(B).

terminations because the process is collateral to removal.[13] There is also no administrative appeal of a denial to reinstate F-1 status. The termination of a SEVIS record constitutes final agency action for purposes of *APA* review.[14]

## FACTUAL ALLEGATIONS

### *Plaintiff Hugo Adrian Villar Castellanos*

42.     Plaintiff is an international student from Mexico who was given an I-20 to enroll in a doctoral program in Physics at UTRGV.

43.     Plaintiff was on F-3 status from 2010, commuting daily from Mexico to attend high school and later applied for an F-1 visa to reside in the U.S. while attending University, which F-1 Visa has been renewed several times.

44.     His last F-1 Visa was renewed on December 23, 2020, and he was issued a multi-entry I-94 for D/S.

45.     When renewing his F-1 Visa the consular officer sent him to Mexico City for a comprehensive medical exam because he had a Class C misdemeanor ticket for public intoxication. He was the passenger in a vehicle and they stopped to use a restroom when he was ticketed (the ticket was dismissed after deferred disposition).

46.     Under Texas law a Class C misdemeanor has no legal disability or disadvantage and is punished by fine, only, up to five hundred dollars. *Tex. Penal Code* §§12.03(c), and 12.23.

47.     He was thereafter cleared by the consular officer and issued his F-1 visa.

---

[13] *See Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995, 1007 (9th Cir. 2024); *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 183 (3d Cir. 2019).
[14] *See Fang*, 935 F.3d at 185.

48.     Upon inspection by the U.S. CBP he was issued a multiuse I-94 to enter the U.S. for the duration of status.

49.     He has traveled to Mexico due to his ties to the Country and its proximity to Brownsville, Texas.

50.     On May 10, 2024, through the online payment system, he entered a guilty plea to a traffic ticket for failure to yield right of way when turning left and paid a fine of three hundred dollars. A minor accident had ensued breaking the headlight on the other vehicle, which was paid by Plaintiff's own insurance.

51.     Thereafter, he traveled to Mexico on more than one occasion without issue.

52.     His last entry to the U.S. was on February 1, 2025.

53.     In this fifth year of the doctoral program, he maintains a 4.0 GPA and was preparing to present his doctoral thesis.

54.     On April 8, 2025, he was notified via an email from his University of the termination of his SEVIS status for "Individual identified in criminal records check and/or has had their visa revoked. SEVIS record has been terminated."

55.     His employment by the UTRGV in relation to his academic requirements as a Doctoral candidate, conducting research as a Graduate Research Assistant with Physics and Astronomy was immediately terminated as result of the termination of his SEVIS Status by ICE, because that termination also terminated his employment authorization.

56.     He has received academic excellence in his undergraduate studies in

Physics and has maintained a 4.0 grade average in his Doctoral studies in Physics.

57.    He has not engaged in political activities.

58.    He received no notice and opportunity to respond from ICE.

59.    Plaintiff was informed the school did not terminate his status, but ICE did.

### Plaintiff Shishir Timilsena

60.    Plaintiff is an international student from Nepal who was given an I-20 to enroll in a Doctoral Program in Physics at UTRGV, in which he has earned a 4.0 GPA.

61.    His undergraduate work was completed in Nepal and he attended UTRGV to obtain a second Master's Degree in Physics.

62.    Prior to coming to the U.S. he married a Nepalese woman who he had only known for a year. She also traveled to the U.S. based on his status.

63.    Almost immediately they began to have problems as a result of her self-harm that he could not help her address and that she would not address. This resulted in him filing an information report in 2023, that he was concerned she would do something to jeopardize his status.

64.    She has continued her behavior and in May 2024, they returned to Nepal for her to stay with her parents and he returned to the U.S. alone; instead she returned later in the month.

65.    Upon his return on May 21, 2024, he was issued an I-94 for D/S.

66.    In July 2024, an incident arose and it was charged that he

"intentionally, knowingly, or recklessly cause bodily injury" to her "by scratching her neck with his fingernails and striking her with his hand", a Class A misdemeanor which can only result in up to a year incarceration, *not* "more than a year". He was released on a $500. Bond. He made no admission of guilt or of facts sufficient to find guilt.

67.    At the first status hearing after release, August 15, 2024, the State filed a Motion to Dismiss in the interest of Justice.

68.    The Judge signed and the case was dismissed on September 17, 2024, and on October, 25, signed an Order to return the $500. Cash bond.

69.    He has committed no offence which would violate his status.

70.    Despite the difficulties he has had to contend with, in his UTRGV Master's program in Physics he maintained a 3.92 GPA and he has maintained a 4.0 GPA in his Doctoral studies in Physics.

71.    On April 7, 2025, he was notified via an email from his University of the termination of his SEVIS status, because he was an "Individual identified in a criminal records check and/or has had their VISA revoked. SEVIS record has been terminated".

72.    His employment by the UTRGV in relation to his academic requirements as a Doctoral candidate, conducting research as a Graduate Research Assistant with Physics and Astronomy was immediately terminated as result of the termination of his SEVIS Status by ICE, because that termination also terminated his employment authorization.

73.    Plaintiff was informed the school did not terminate his status.

74.    Plaintiff is focused on his studies and has not engaged in any political activity.

75.    Plaintiff received no notice and opportunity to respond from ICE.

### Plaintiff Amir Gholami

76.    Plaintiff is an international student from Iran who was given an I-20 to enroll in a Doctoral Program in Finance at UTRGV.

77.    His F-1 Visa was approved and he was cleared for entry to the U.S. by CBP who on August 15, 2021, issued him a single use I-94 for D/S.

78.    His F-1 Visa was renewed on July 13, 2023, and he was cleared for entry to the U.S. by CBP who on August 26, 2023, issued him a multiuse I-94 for D/S.

79.    He has been engaged in a full course of study and authorized employment at the University.

80.    On October 30, 2024, he was charged with preventing or interfering with the ability to place an emergency call, a Class A Misdemeanor punishable up to one year, *not* "more than one year".

81.    No conviction exists, thus the charge does not make him deportable.

82.    On April 10, 2025, he was notified via an email from his University of the termination of his SEVIS status by ICE, because "Individual was identified in criminal records check and/or has had their visa revoked. SEVIS record has been terminated."

83.    His employment by the UTRGV in relation to his academic

requirements as a Doctoral candidate, as a Graduate Associate Instructor, was immediately terminated as result of the termination of his SEVIS Status by ICE, because that termination also terminated his employment authorization.

84.    He needs only to complete the semester and defend his dissertation, he has maintained a 4.0 GPA, and has interviewed with several Universities for an Associate Professor position.

85.    He did not receive prior notice and the opportunity to respond from ICE.

86.    Also on April 10, 2025, at 11:01 PM the Consulate in Dubai sent him notice of his visa revocation and they stated that they notified ICE who "may notify your designated school official".

87.    The revocation notice states that "remaining in the U.S. without lawful immigration status can result in fines, detention, and/or deportation. … Persons being deported may be sent to countries other than their countries of origin", and without the ability to put their affairs in order.

88.    The notice encouraged registering an intent to depart of his own accord using the CBP Home App to avoid the adverse consequences.

89.    To be clear, he does not contest the visa revocation in this case, rather he contests the Termination of his I-20 SEVIS status without notice and the opportunity to respond.

### *Plaintiff Julio Dylan Sanchez Wong*

90.    Plaintiff is an international student from Mexico who was given an I-20 to enroll in high school and later to enroll in a Bachelor's Program in Computer

Sciences at UTRGV.

91.     Plaintiff paid his I-901 SEVIS Fee and was granted F-1 status on or about August 14, 2015.

92.     Plaintiff again applied for an F-1 visa to reside in the U.S. while attending University, which F-1 Visa was last renewed on August 18, 2019, and expired on July 29, 2023.

93.     Upon inspection by the U.S. CBP, on August 19, 2019, he was issued a multiuse I-94 to enter the U.S. for the duration of status.

94.     His I-20 SEVIS status has been continually renewed and was last renewed by his DSO on December 18, 2024, so that he could repeat a class, prior to graduation and applying for OPT.

95.     On April 8, 2025, he was notified via an email from his University of the termination of his SEVIS status for "Individual identified in criminal records check and/or has had their visa revoked. SEVIS record has been terminated."

96.     His employment by the UTRGV in relation to his academic requirements as a Student Assistant with Information Technologies was immediately terminated as result of the termination of his SEVIS Status by ICE, because that termination also terminated his employment authorization.

97.     Plaintiff was informed that the school itself did not terminate his SEVIS status, ICE terminated his status.

98.     Plaintiff is unaware of the factual basis for the termination of his SEVIS status.

18

99.    Plaintiff's only criminal history is a conviction for "Driving While Intoxicated", a Class B Misdemeanor, punishable by up to 180 days. *Tex. Penal Code* §§12.22 and 49.04.

100.    The matter was dismissed by his successful completion of a Pretrial Diversion Program but meets the definition of conviction under 8 U.S.C. §1101(a)(48), however, it is not a ground of inadmissibility under 8 U.S.C. §1182(a)(2)(A)(i)(I) because it is excepted by §1182(a)(2)(A)(ii)(II), because it is his only offense, the maximum penalty possible was 180 days, and he was not sentenced to a term of imprisonment.

### All students

101.    Since receiving notice of their SEVIS termination, Plaintiffs have been experiencing high levels of stress and anxiety. They are unsure of what will happen to them. They also fear being labeled a national security or foreign policy threat if they have to leave and seek to return to the United States in the future, or to travel to another country, because of the labels attached to their SEVIS termination.

102.    The SEVIS terminations have created havoc and uncertainty for schools as well. Upon information and belief, Plaintiff's university was not given any advanced warning or further explanation for the termination of Plaintiff's SEVIS status. Schools are scrambling to respond to these unprecedented actions and determine whether and how they can help their international students.[15]

---

[15] *See* Liam Knox, *How Trump is Wreaking Havoc on the Student Visa System*, Inside Higher Ed, April 5, 2024, https://www.insidehighered.com/news/global/international-students-us/2025/04/03/how-trump-wreaking-havoc-student-visa-system.

103. Intervention by the Court is necessary to remedy Defendants' illegal conduct.

104. DHS has not initiated removal proceedings against Plaintiffs.

105. All of the Plaintiffs are valued by their university, which desires for them to continue to be enrolled in school. However, Plaintiffs' ability to do so is in jeopardy due to the termination of their SEVIS record and status.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### Administrative Procedure Act
(*Unauthorized SEVIS Termination*)

106. Plaintiffs incorporates the allegations in the paragraphs 1 through 103 as though fully set forth herein.

107. Under §706(a) of the APA, final agency action can be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; . . . [or] without observance of procedure required by law." 5 U.S.C. §706(2)(A), (C)-(D).

108. Defendants have no statutory or regulatory authority to terminate Plaintiffs' SEVIS record or status based simply on revocation of a visa. Additionally, nothing in Plaintiffs' criminal history or other history provides a basis for termination.

109.    Therefore, Defendants' termination of Plaintiffs' SEVIS status is not in accordance with law, in excess of statutory authority, and without observance of procedure required by law.

## SECOND CAUSE OF ACTION

### Fifth Amendment
### (*Procedural Due Process*)

110.    Plaintiffs incorporates the allegations in the paragraphs 1 through 103 as though fully set forth herein.

111.    Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of property interests protected under the Due Process Clause of the Fifth Amendment.

112.    Once a student is lawfully admitted to the United States in F-1 status and complies with the regulatory requirements of that status, the continued registration of that student in SEVIS is governed by specific and mandatory regulations. Because these regulations impose mandatory constraints on agency action and because SEVIS registration is necessary for a student to remain enrolled as an international student, including engaging in related authorized employment Plaintiffs have a constitutionally protected property interest in their SEVIS registration.

113.    Defendants' terminated Plaintiffs' SEVIS record based on improper grounds without prior notice and without providing Plaintiff an opportunity to respond. The failure to provide notice of the facts that formed the basis for the SEVIS termination is a violation of due process under the Fifth Amendment.

## THIRD CAUSE OF ACTION

### Administrative Procedure Act
(*Procedural Due Process*)

114.    Plaintiffs incorporates the allegations in the paragraphs 1 through 103 as though fully set forth herein.

115.    Under §706(a) of the *APA*, final agency action can be set aside if it is "contrary to a constitutional right, power, privilege, or immunity." 5 U.S.C. §706(2)(B).

116.    Defendants terminated Plaintiff's SEVIS record based on improper grounds without prior notice and without providing Plaintiff an opportunity to respond. The failure to provide notice of the facts that formed the basis for the SEVIS termination is a violation of due process under the Fifth Amendment.

117.    Accordingly, Defendants' action is contrary to a constitutional right.

## FOURTH CAUSE OF ACTION

### Administrative Procedure Act
(*Arbitrary and Capricious SEVIS Termination*)

118.    Plaintiff incorporates the allegations in the paragraphs 1 through 103 as though fully set forth herein.

119.    Under §706(a) of the APA, final agency action can be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," including if it fails to make a rational connection between the facts found and the decision made. 5 U.S.C. §706(2)(A).

120.    Defendants failed to evaluate the facts that formed the basis for their

decision to terminate Plaintiff's SEVIS status in violation of the APA.

121.    Defendants' action is therefore arbitrary and capricious.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court grant the following relief:

a.  Assume jurisdiction over this matter;

b.  Provide immediate injunctive relief to prevent irreparable injury pursuant to 5 U.S.C. §705;

c.  Declare that the termination of Plaintiff's SEVIS status was unlawful;

d.  Vacate and set aside DHS's termination of Plaintiff's SEVIS status;

e.  Order that Defendants restore Plaintiff's SEVIS record and status;

f.  Plaintiffs' seek an award of costs and reasonable attorney fees under the Equal Access to Justice Act, 28 U.S.C. §2412(b), upon motion to the court;

g.  Grant such further relief as the Court deems just and proper.

Dated: April 15, 2025                  Respectfully Submitted,

                                       _/s/ Marlene A. Dougherty_
                                       Marlene A. Dougherty
                                       Tex. Bar No. 24095181

                                       Law Office of Marlene A. Dougherty
                                       314 E. 8th Street
                                       Brownsville, Texas 78520
                                       Telephone: (956)542-7108
                                       e-mail: marlene@mdjd180.com